UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURLEY JOHN BROUSSARD, Jr., | No.  2:13-cv-0499 KJM DAD P |
| Plaintiff, | |
| v. | <u>ORDER AND</u> |
| MATTHEW CATE, et al., | <u>FINDINGS AND RECOMMENDATIONS</u> |
| Defendants. | |

     Plaintiff is a state prisoner proceeding pro se with an action for alleged violations of his civil rights, pursuant to 42 U.S.C. § 1983.  He has filed a motion seeking both a preliminary injunction and a temporary restraining order (TRO).  Plaintiff has also filed a motion for permission to proceed with a second or successive federal habeas petition.[1]

     The court turns first to plaintiff's motion for a temporary restraining order.  A temporary restraining order is an extraordinary measure of relief that a federal court may impose without

---

[1] Although he filed a copy in this court, plaintiff properly addresses his motion for leave to file a second or successive habeas petition to the Ninth Circuit Court of Appeals.  (<u>See</u> Doc. 34 at 1.)  Petitioner also filed a copy of his motion in a habeas action he has pending in the Fresno Division of this court.  (<u>See</u> <u>Broussard v. Cate</u>, No. 1:12-cv-1040-LJO-MJS, Doc. No. 105.)  The request for leave to file a second or successive habeas petition was docketed in this case as a motion to amend the complaint. (Doc. No. 34).  Insofar as that  motion seeks no order from this court but rather seeks relief available only in a federal habeas action, not a civil rights action such as this, it will be denied.

1

1   notice to the adverse party if, in an affidavit or verified complaint, the movant "clearly show[s]
2   that immediate and irreparable injury, loss, or damage will result to the movant before the adverse
3   party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Particularly where, as here, the
4   motion has been served on the adverse party a motion for temporary restraining order may be
5   treated as a motion for preliminary injunction.[2]

6   A preliminary injunction should not issue unless necessary to prevent threatened injury
7   that would impair the court's ability to grant effective relief in a pending action. "A preliminary
8   injunction . . . is not a preliminary adjudication on the merits but rather a device for preserving the
9   status quo and preventing the irreparable loss of rights before judgment." Sierra On-Line, Inc. v.
10  Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984). A preliminary injunction represents
11  the exercise of a far-reaching power not to be indulged except in a case clearly warranting it.
12  Dymo Indus. v. Tapeprinter, Inc., 326 F.2d 141, 143 (9th Cir. 1964). "The proper legal standard
13  for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the
14  merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the
15  balance of equities tips in his favor, and that an injunction is in the public interest.'" Stormans,
16  Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing Winter v. Natural Res. Def. Council,
17  Inc., 555 U.S. 7, 22 (2008) (internal quotations omitted)). In cases brought by prisoners involving
18  conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no
19  further than necessary to correct the harm the court finds requires preliminary relief, and be the
20  least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). A presently
21  existing actual threat must be shown, although the injury need not be certain to occur. See Zenith
22  Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 130-31 (1969); FDIC v. Garner, 125 F.3d
23  1272, 1279-80 (9th Cir. 1997); Caribbean Marine Services Co., Inc. v. Baldrige, 844 F.2d 668,
24  674 (9th Cir. 1988).
25  ////
26  ////

---

[2] See, e.g., Aiello v. One West Bank, No. 2:10–cv–0227–GEB–EFB, 2010 WL 406092 (E.D. Cal. Jan. 29, 2010).

2

1. <u>Requests For Injunctive Relief Regarding Plaintiff's Housing Assignments</u>

Plaintiff's first request for injunctive relief, that he be retained in administrative segregation (<u>see</u> Motion (Doc. No. 35) at 5), is not supported by any specific allegation that would inform the court as to why it should take the extraordinary step of issuing such an order. Plaintiff claims that he was recently a witness in the trial of the case entitled <u>Brown v. Fambrough</u>, No. 1:09-cv-0573 JLT (E.D. Cal.), and that his testimony in that case "places [his] life in jeopardy[.]" (Motion (Doc. No. 35) at 4.) The docket in the civil action referred to by plaintiff reflects that a writ was issued requiring plaintiff's presence to provide testimony at the trial in that action. <u>See</u> <u>Brown v. Fambrough</u>, No. 1:09-cv-0573 JLT, Doc. Nos. 110, 136 and 142. However both the final witness list filed in that action as well as the court's minutes from the trial of that matter do not include plaintiff's name as one of the witnesses who in fact testified. (<u>Id.</u>, Doc. Nos. 145, 152 and 153.) Thus, contrary to his representation to this court, it appears that plaintiff did not actually testify at trial in <u>Brown v. Fambrough</u>.

As to the nature of his alleged testimony, plaintiff says only that he "testified . . . that he designed the environmental security structures, [and] that information is within [the] general population of the California prison system[.]" (Motion at 3-4.) This vague description of his purported trial testimony does not indicate that plaintiff, if he had actually been called to testify, would have put his life in danger "within the general population" as he contends. Moreover, the court notes that plaintiff is listed in the final pre-trial order in <u>Brown v. Fambrough</u> as a potential trial witness for the prisoner plaintiff who brought the claims in that case. (<u>Brown v. Fambrough</u>, No. 1:09-cv-0573 JLT, Doc. 72 at 7.) Though not conclusive, that fact suggests that plaintiff was considered friendly to his fellow inmate's cause, not a witness who might be labeled as the equivalent of an informant, thereby placing him potentially in harm's way.

Plaintiff also seeks an order from this court requiring that he not be transferred to any other prison. (Motion (Doc. No. 35) at 5.) However, plaintiff makes no showing as to why such an order would be essential to preserve the status quo in the underlying action, nor does he demonstrate how, without that preliminary relief, he is likely to suffer irreparable harm on the merits of this case or, more importantly, to his person. "Speculative injury does not constitute

3

irreparable injury sufficient to warrant granting a preliminary injunction." Caribbean Marine Servs. Co., 844 F.2d at 674 (citing Goldie's Bookstore, Inc. v. Superior Court, 739 F.2d 466, 472 (9th Cir. 1984)).

### 2. Requests For Injunctive Relief Concerning Mental Health Treatment

Plaintiff's motion also includes several requests for purely injunctive relief involving the administration of mental health services within the California Department of Corrections and Rehabilitation (CDCR). (Motion (Doc. No. 35) at 5-6.) Again, in connection with these requests plaintiff makes no specific showing that would justify transforming this case into a vehicle for orders affecting CDCR's mental health policies. The civil action within in which such relief may be obtained is already pending in this court: Coleman v. Brown, et al., No. 2:90-cv-0520 LKK DAD, is an ongoing class action challenging the constitutionality of CDCR's state-wide system of providing mental health treatment to prisoners. The Coleman case is relevant here because individual requests for injunctive or equitable relief from allegedly unconstitutional conditions of confinement, including inadequate mental health treatment, cannot be brought where there is a pending class action suit involving the same subject matter. See Ortega v. Kelly, No. 2:07-cv-2095 LKK DAD P, 2008 WL 3928236 at *2-*3 (recommending dismissal of claims for injunctive relief because they fell within the purview of the Coleman class action) (E.D. Cal. Aug. 25, 2008). Of course, a class action suit that demands only declaratory or injunctive relief does not bar subsequent individual claims for damages by class members. However, plaintiff's claims seeking only injunctive relief cannot proceed in this case.

### 3. Request for access to legal research

Plaintiff further requests an order requiring unnamed prison officials to allow him "ten hours a week for legal research and study." (Motion at 5.) A plaintiff cannot, as a general matter, seek injunctive relief in a case against parties who are not named as defendants in that case. "Unrelated claims against different defendants belong in different suits[.]" George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). However, a federal court does have the power to issue orders in aid of its own jurisdiction, 28 U.S.C. § 1651(a), and to prevent threatened injury that would impair the court's ability to grant effective relief in a pending action. Sierra On-Line, Inc., 739

4

1  F.2d at 1422; Gon v. First State Ins. Co., 871 F.2d 863 (9th Cir. 1989).  Liberally construed,
2  plaintiff's claim could be that prison officials are denying him access to the prison law library or
3  his legal materials.  That allegation could, if proven, justify an order in furtherance of the court's
4  ability to adjudicate a particular case.

5  An inmate has a constitutionally protected right of meaningful access to the courts.
6  Bounds v. Smith, 430 U.S. 817, 820-21 (1977).  This right includes reasonable access to a legal
7  library.  However, there is no freestanding constitutional right to a law library.  The ability to
8  conduct legal research serves as one means of ensuring the fundamental constitutional right of
9  access to the courts.  See Lewis v. Casey, 518 U.S. 343, 350-51 (1996).  "[T]he Constitution does
10  not guarantee a prisoner unlimited access to a law library.  Prison officials of necessity must
11  regulate the time, manner, and place in which library facilities are used."  Linquist v. Idaho State
12  Bd. of Corrections, 776 F.2d 851, 858 (9th Cir. 1985).  An inmate is also entitled to adequate
13  materials for drafting submissions to the courts.  "It is indisputable that indigent inmates must be
14  provided . . . with paper and pen to draft legal documents, with notarial services to authenticate
15  them, and with stamps to mail them."  Bounds, 430 U.S. at 824-25.

16  A prisoner who claims that his right of access to the courts has been blocked must show
17  that (1) access was so limited as to be unreasonable and (2) the inadequate access caused actual
18  injury.  Vandelft v. Moses, 31 F.3d 794, 797 (9th Cir. 1994).  A prisoner cannot rely on
19  conclusory declarations of injury to substantiate this kind of claim.  Instead he must demonstrate
20  that a non-frivolous legal right has been frustrated or impeded.  Furthermore, it is not enough to
21  show some sort of denial and leave it at that.  An "actual injury" is "actual prejudice with respect
22  to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a
23  claim."  Lewis, 518 U.S. at 348.

24  The court's docket provides ample evidence that plaintiff is not being unreasonably
25  denied access to the court in this case.  During the two months immediately preceding the filing
26  of the instant motion, plaintiff filed five other substantive requests for court action, including two
27  sets of objections to court orders or recommendations.  (See Doc. Nos. 27, 30 and 32-34.)
28  Nothing before this court indicates that plaintiff has been prejudiced by restricted access to his

5

materials or to the prison library or that "ten hours a week for legal research and study" is essential to preserve the status quo in this case.

### 4. Request for an investigation

Finally, plaintiff seeks an "investigation" into unnamed defendants who allegedly fabricated false reports against him. As stated above, a plaintiff generally cannot seek injunctive relief in a case against parties who are not named as defendants in that case. See George, , 507 F.3d at 607. Moreover, a federal court's role in civil rights actions of this sort is to adjudicate claims that are properly averred by prisoners; it is not an investigative agency and therefore cannot conduct an independent inquiry into complaints about the actions of individual correctional officers.

## CONCLUSION

For all of the foregoing reasons, plaintiff has failed to demonstrate that he is entitled to any of the preliminary injunctive relief he seeks. Therefore, his motion should be denied. Accordingly, IT IS RECOMMENDED that the motion for preliminary injunction and temporary restraining order (Doc. 35) be denied.

Furthermore, IT IS HEREBY ORDERED that plaintiff's motion to amend the complaint (Doc. No. 34)[3] is denied as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The

/////

/////

---

[3] As noted, although docketed in this civil rights action as a motion to amend, this motion is actually is a request for leave to file a second or successive petition in a habeas action plaintiff has pending in this court. See fn. 1, above.

6

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 4, 2013

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

hm
brou0499.tro

7